| | | |
|---|---|---|
| John Hall | * | IN THE |
| Monica M. Bahena | | |
| 9630 Milestone Way, Apt. 3073 | * | CIRCUIT COURT |
| College Park, MD 20740 | | |
| | * | FOR |
| *On their own behalf and on behalf* | | |
| *of all others similarly situated* | * | PRINCE GEORGE'S COUNTY |
| | | |
| *Plaintiffs* | * | CASE NO: C-16-CV-24-005335 |
| | | |
| v. | * | |
| | | |
| Camden Development, Inc. | * | |
| Suite 1300 | | |
| Three Greenway Plaza | * | |
| Houston, TX 77046 | | |
| | * | |
| **Serve on Resident Agent:** | | |
| Capitol Corporate Services, Inc. | * | |
| 3206 Tower Oaks Blvd. | | |
| 4th Floor | * | |
| Rockville, MD 20852 | | |
| | * | |
| *Defendant* | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs John Hall and Monica M. Bahena ("Named Plaintiffs" or "Plaintiffs"),

individually and on behalf of all others similarly situated (the "Class"), file this Class Action

Complaint and Demand for Jury Trial by and through undersigned counsel against Defendant

Camden Development, Inc. and for cause state:

## **BACKGROUND**

1. For years, Defendant Camden Development, Inc. ("Camden" or "the Company")

has used deceptive advertising and unfair practices to charge millions of dollars in application

fees and junk fees that have harmed Maryland residents. Camden has also violated Maryland law

by overcharging utilities fees without disclosing required information about its utility billing practices.

2.      Camden is one of the largest publicly traded multifamily housing companies in the United States. The Company has been a pioneer in the area of "ancillary income," meaning the collection of fees that are billed separately from the monthly rent. The Company's deceptive trade practices have been a boon for its executives and shareholders.

3.      Camden Development, Inc. is a subsidiary of Camden Property Trust, a Texas real estate investment trust ("REIT") formed in 1993. Camden's predecessor companies were founded by Richard Campo and Keith Oden in 1982. Mr. Campo and Mr. Oden now serve as the company's Chairman of the Board and Executive Vice Chairman of the Board, respectively. The Company's name was chosen because it is a portmanteau of the two founders' surnames.

4.      As of December 31, 2023, the Company owned interests in, operated, or were developing 176 multifamily properties comprised of 59,800 apartment homes across the United States.

5.      Four of Camden's properties are in Maryland, including three in Montgomery County and one in Prince George's County. Camden owns and manages a total of 1,599 apartment units in Maryland. The Camden Shady Grove has 457 units, the Camden Washingtonian has 365 units, the Camden Fallsgrove has 268 units, and the Camden College Park has 509 units.

6.      Camden operates a vast advertising campaign that highlights its amenities, including by boasting about its "many money-saving perks" on its website.



7.      The reality for consumers is different than the marketing blurbs. Camden hides junk fees in its rental listings, making the actual price of consumers' monthly lease payments higher than the company advertises. And it charges for a one-time "Community Fee" and a monthly "Technology Package" without an explanation of what exactly tenants are paying for.

8.      Camden calls these deceptive fees "ancillary income." The Company has pioneered the use of these junk fees, leading to steady profits, even during tough economic times. In 2011, Linda Willey, director of ancillary services for Camden, said the Company views ancillary income as "icing on the cake, as supplemental to our rental income." In 2007, Mr. Oden described Camden as a "nickel-and-dime business."

9.      Camden has long been aware of these practices' harm to tenants. Numerous reviews on various websites complain about their deceptive junk fees.



10.     In addition, Camden's billing practices have been covered by news outlets, including a CBS News affiliate article entitled "Some North Texas Renters Unable to Cut Cable TV: 'We Should Not Be Forced To Pay For Something We Cannot Afford.'"

---

**⬤CBS NEWS**   Latest   Local News   · Live   Shows   •••

"It's a bill I don't need," Martin said. "It's making me spend more money when I don't have to."

Technology packages join the long list of mandatory amenities renters already face in many communities, according to Sandy Rollins, the executive director of the Texas Tenants' Union.

"It goes way beyond nickel and diming," said Rollins.

She argues that fees for services such as valet trash, package pick-up and pest control take money away from other necessities.

"It can eat into other necessities, cable is not a necessity," Rollins said. "Food is a necessity, medicine in some cases, is a life-saving necessity."

But some companies, such as Camden, argue most residents want cable.

---

11.     Camden's defense is that residents want to pay mandatory fees. But its Technology Package was more easily defended in 2007, when Mr. Oden described the bundle—then called "Perfect Connection"—as "an incredible and very compelling example of value-add to the residents" because "residents actually get the same cable offering at a lower price." In 2007, YouTube was two years old, and streaming services like Netflix, Hulu, and Amazon Prime

4

Video did not exist. In 2024, Camden's tenants otherwise could join the millions of Americans who have saved money by "cutting the cord" of cable television. They could opt for streaming services that cost around $10 each or even purchase an entire live TV package from YouTube TV or Sling TV for around $40-70.

12.     Instead, Camden requires those residents to pay $118 per month for a Technology Package that includes cable, Internet, and an opaque array of other services loosely related to "technology" that are never adequately explained.

13.     Camden also uses a Ratio Utility Billing System (RUBS) calculation for its water, sewer, and stormwater fees that allow the Company to overcharge its residents. In 2022, the Maryland General Assembly responded to concerns about the opacity of RUBS formulas by passing the Tenant Protection Act into law, which regulated so-called "unmetered billing" for the first time.

14.     Camden responded to the law by ignoring it. Two years after the law's effective date, Camden has made no attempt to comply with its provisions by disclosing information about its utility billing calculations.

15.     Rather than pursue transparency in response to this negative attention, Camden has remained laser-focused on its bottom line, continuing to deceive and harm consumers with deceptive marketing, illegal fees, and utility overbilling.

16.     Maryland entitles Plaintiffs and similarly situated class members to compensatory damages and attorneys' fees.

## JURISDICTION AND VENUE

17.     Venue in Prince George's Couty is proper in that Plaintiffs live in Prince George's County and Defendant transacts business within Prince George's County.

18.     This Court has jurisdiction of this matter pursuant to Md. Rule 2-231 in order to facilitate management of multiple similar claims.  Maryland law does not permit class actions to be maintained in the District Court of Maryland.

## PLAINTIFFS

19.     John Hall is a current resident of Prince George's County, Maryland. He is a tenant of a property in Prince George's County that is managed by Defendant and who has been charged and paid illegal fees.

20.     Monica M. Bahena is a current resident of Prince George's County, Maryland. She is a tenant of a property in Prince George's County that is managed by Defendant and who has been charged and paid illegal fees.

21.     Defendant Camden Development, Inc. is a Delaware corporation with its principal place of business at Three Greenway Plaza, Suite 1300, Houston, Texas 77046. Camden transacts or has transacted business in Maryland and throughout the United States. At all times relevant to this Complaint, Camden Development has advertised, marketed, promoted, offered, leased, and managed the rental of residential apartment units to consumers throughout the state.

## FACTUAL ALLEGATIONS

### A.  Camden's Deceptive Business Model

22.     Camden Development, Inc. lures people to its rental listings by deceptively advertising lower monthly rents than the Company charges. Baited with these attractive rental prices, tenants pay nonrefundable application fees to apply for a Camden listing and reserve the property, only later to learn that the actual monthly rental price is higher than advertised. Since 2021, Marylanders have paid thousands of dollars in application fees for listings that were deceptively priced by Camden.

6

23.     Camden charges tenants mandatory junk fees that are not included in the advertised rental price and are not adequately disclosed before someone submits a rental application.

24.     Since at least 2015, Camden has charged a monthly fee for a so-called "Technology Package." This fee bundle, which currently adds between $116 and $118 per month to residents' rental payment and more than $1,400 over the course of a one-year lease, is mandatory for the Company's tenants in Maryland. In a 2016 article on the National Apartment Association's website, Kip Zacharius, the Vice President of Business Services at Camden, stated that "40 percent to 50 percent of residents enroll immediately in the program," suggesting that up to half of residents were less enthusiastic about the mandatory fee. Camden is an innovator in the junk fee space—Mr. Zacharius noted in 2016 that he was "not aware of any other apartment owner or manager that charges a similar tech fee."

25.     According to the 2016 article, Camden's Technology Package generally includes cable television and internet service. But the monthly fee also covers expenses that residents could not imagine they are being separately charged for, including "access to the cable or Internet providers' mobile app," "access to online rent payments and service requests," and "Mycamden.com—a resident exclusive social site." Camden's website also includes "Smart door locks and gates" as part of its "Technology" amenities.



26.     Camden also charges a one-time fee at the beginning of the lease called the "Community Fee." As of November 2024, the mandatory Community Fee ranged from $450 to $600 in Camden's four properties in Maryland. In a reply to a Yelp review, a Camden business manager explained to a tenant that the Community Fee was "added to every lease" and "covers the costs and upkeep associated with the community and amenities."

I'm very confused why Camden is forcing residents to pay a "$25 community fee" when renewing their lease. Not one person in the office can explain what this fee covers and why we have it. This place already has limited parking charging, $5 a month per vehicle to park at your own home which is outrageous. The amenities have drastically gone downhill yet we are being forced to pay more. The breezeways are disgusting!! We have been told time and time again that the office staff is performing "weekly building walks" yet I come home to trash on our staircase everyday. The leadership and organization of this property is a joke. What a mistake to renew.

If I could give 0 stars. I would.



💡 Helpful 1    🤚 Thanks 1    🤍 Love this 0    😧 Oh no 0

**Camden Manager**
Business Manager

Jul 8, 2022

Hi Christopher,

The community fee is added to every lease agreement and renewal once as a one time fee and is becoming more and more industry standard. The fee covers the costs and upkeep associated with the community and amenities. The vehicle charge is a minimal charge as well that has significantly impacted the amount of available spaces for our residents to park for unregistered or inoperable vehicles in the community, freeing up spaces for residents and guests. We always also recommend for the breezeways to assist us keeping them clean by ensuring your valet trash is kept inside until pick up time begins, and to kindly submit a service request for any items needing attention and maintenance will take care of the request. We welcome the opportunity to meet with you, please contact us in the office.

Read less

27.     Camden's hidden fees are worth millions of dollars. In their annual filing to the SEC, the Company noted a nationwide increase of "approximately $3.3 million related to income from our utility rebilling and ancillary income programs, and an increase of approximately $0.5 million in fees and other income." Elsewhere in the filing, the Company warned investors that one risk it faces is the prospect of new laws that "could limit our ability to . . . charge certain fees."

28.     Camden's investors add pressure for the Company to expand its junk fee portfolio. On a Q2 2017 Earnings Call, an investor asked the Company's leadership: "[T]he Technology Package has been a pretty good success past couple of years. I'm curious what

9

additional revenue growth initiatives you have in the hopper." Alex Jessett, the Company's Chief Financial Officer, responded that the Company has "lots of talented folks and we're always looking for new initiatives" to raise revenue.

29.    On a 2021 Earnings Call, an investor asked: "I guess 15% increase in rents is improving lives of people. But I am curious, is that market [rate] or is that Camden plus market because all the bells and whistles that you can offer people that your competition can't?" Mr. Oden responded that 15% figure amounted to "total revenue," including "our Technology Package and all the other amenities that we provide our residents, yes." He added, "As to whether it's improving their lives or not, we have—it's a three-legged stool. We are going to improve the lives of our residents, our shareholders, and our employees. And so, clearly we're improving the lives of our shareholders."

30.    While Camden's website has changed a few times since 2021, all versions have failed to include all mandatory fees in the advertised monthly lease price, instead relying on a misleading "Base Rent" or "Starting Price." Camden's website never informs prospective tenants that this "Starting Price" is not actually attainable.



31.     To the extent Camden's website includes information about its mandatory add-on fees, the information is inadequate in terms of its content, presentation, proximity, prominence, and placement. Prospective tenants must click through several screens to access information about Camden's mandatory fees. When they arrive to that page, the Company lists its fees, but never makes it clear that the fees are mandatory, rather than optional. Consumers are not accustomed to paying mandatory fees for a "Technology Package" and "Trash Butler," and can readily assume that they can instead opt for the "Starting Price."



32.     After the fees are outlined, the next section of Camden's website states the "Other Potential Fees," which would lead a reasonable consumer to believe that the earlier fees were also "potential" ones.



33.     Camden advertises its home listing through third-party websites such as Zillow, Trulia, and Realtor.com where the monthly rental payment is prominently displayed in search engine results and the listing itself. Like the Camden website listings, the advertised rental price does not include mandatory fees. Unlike the Camden website, these third-party websites include no information about Camden's mandatory fees no matter how much time you take to explore the site. There is no way for consumers who rely on the third-party websites to learn the total monthly cost to lease these apartments until they receive a copy of their lease—that is, until after paying application fees, and, in many instances, moving-related expenses.



34.     By excluding mandatory fees from the advertised monthly price, people also are not able to accurately compare Camden's apartment prices with the price of other companies' units.

**B.  John Hall and Monica Bahena's Lease**

35.     In early March of 2024, Plaintiffs John Hall and Monica M. Bahena began researching apartments that met both their budget and geographic preferences. Their previous monthly rent was $1,600, and they did not want to pay more than $100 or $200 above that.

36.     They used Zillow—a leading real estate marketplace—to search for apartment buildings with available units.

37.     Using Zillow, Plaintiffs discovered Camden College Park Apartments. An available one-bedroom apartment was listed for $1,729, which was within their price range.

13

38.     On March 17, 2024, Plaintiffs paid a total of $50 in application fees to apply for the advertised one-bedroom apartment. On their Lease Application Agreement, Plaintiffs stated that their "Advertising Source" was Zillow.

39.     On or about March 23, 2024, Plaintiffs entered into a Lease Agreement for the rental of Unit 3073 at 9630 Milestone Way, College Park, MD (hereinafter the "Hall and Bahena Lease"). The initial term of the lease began March 30, 2024 and ended on July 27, 2025.

40.     Camden Development, Inc. is listed as the managing agent for the owner and is referred to throughout as the Hall and Bahena Lease as "Owner."

41.     The monthly rent was $1,729.00.

42.     The Hall and Bahena Lease provided for five monthly fees: Technology Package ($118), Trash Charge ($6), Front Door Trash Pickup ($31), and Parking Monthly Rent Charge ($40).

43.     The Hall and Bahena Lease provided for two one-time fees: an application fee ($50 total, $25 for each tenant) and the Community Fee ($450).

44.     Upon information and belief, Camden applies residents' Community Fee to general upkeep of its apartment buildings' common areas despite Maryland law assigning responsibility of common areas to the landlord.

45.     The Hall and Bahena Lease contained a "Camden Maryland State Addendum."

46.     The Technology Package is detailed in the Hall and Bahena Lease in a manner that is misleading, deceptive, and confusing. First, on Page 1, the lease states that the Technology Package "may include cable TV, internet and Wi-Fi." On page 7, the lease states that the Technology Package "may, but is not required to, include digital adapters, cable TV, internet, WiFi and electronic access devices. If the Technology Package box is checked on page 1 of this

Lease, the Technology Package amenities offered by the Community are included in the Monthly Rent." While the box for the Technology Package is checked on page 1 of the Hall and Bahena Lease, the cost of the Technology Package is not, in fact, included in the "Rent" on Page 1, but instead listed as a separate $118 fee. Nowhere in the Hall and Bahena lease or any Lease Addenda is an explanation of the services included in the Technology Package.

47.     While the Company's employees have told industry journals and websites that the Technology Package includes, for example, door locks, an online payment portal, and a "social site," these bizarre "technology" charges are not disclosed in the Hall and Bahena Lease.

48.     The Camden Maryland State Addendum stated that "Residents will be responsible for payment of all utilities associated with the Unit as set forth below." It then stated the following:

        a.   The water bill would be paid by the Resident to the Owner using a Ratio Utility Billing System (RUBS) calculated based on an Occupancy Method, defined as "[Total Expense ÷ Total Occupants of Community] x [Your Occupants]."

        b.   The sewer bill would be paid by the Resident to the Owner using a Ratio Utility Billing System (RUBS) calculated based on an Occupancy Method, defined as "[Total Expense ÷ Total Occupants of Community] x [Your Occupants]."

        c.   The stormwater bill would be paid by the Resident to the Owner using a Ratio Utility Billing System (RUBS) calculated based on a Per Dwelling Unit Method, defined as "[Total Expense ÷ Total Occupied Units]."

49.     Maryland law states that these bills constitute a "Ratio utility billing system" and the "utilities" defined in that law include water, gas, wastewater and sewage disposal service. Md Code Ann., Real Prop. § 8-212.4(a)(5) and (6).

50.     The information required under paragraph (1) of Md. Code Ann., Real Prop. § 8-212.4 must be provided to tenants in writing, and includes the following:

      a.     A copy of the last two utility bills issued to the landlord;

      b.     The average monthly bill for all dwelling units in the residential rental property in the previous calendar year, by utility; and

      c.     A citation to parts of this section (Md Ann. Code Real Property Article, §8-212.4)

51.     Defendant failed to provide any of the information set forth in the prior paragraph.

52.     Upon information and belief, as a part of its routine business practices in Maryland, Camden systematically and regularly charges Maryland tenants these utility fees without providing the required information.

53.     Camden has knowingly assessed, demanded and attempted to collect or has collected alleged utility payments from the Named Plaintiffs and the RUBS Class, for which the tenants were not liable as a matter of law.

54.     Plaintiffs paid water, sewer, and stormwater fees. Plaintiffs were charged amounts that are far higher than normal in similar apartment buildings. For example, for the period between June 14, 2024 and July 16, 2024, Plaintiffs were charged $95.60 for sewer, $59.57 for water, and $8.99 for stormwater.

55.     Upon information and belief, Camden took advantage of their failure to disclose this required information by overcharging tenants on their utility bills.

## CLASS ACTION ALLEGATIONS

56.     Plaintiffs re-allege and incorporate by reference herein all the allegations contained above.

57.     Pursuant to Maryland Rule 2-231, Plaintiffs assert claims on behalf of the following Classes:

a.  **The Deceptive Marketing Class**: All persons from November 6, 2021 to the present who paid an application fee to a residential rental property managed by Defendant Camden Development, Inc. in Maryland and stated on Camden's Lease Application Agreement that the "Advertising Source" was Defendant's website or a third-party real property website, including, but not limited to, Zillow, Realtor.com, Trulia, Apartmentguide.com, and Redfin.

b.  **The Illegal Fee Class**: All persons from November 6, 2021 to the present who are or were tenants in a residential rental property owned by Defendant Camden Development, Inc. in Maryland and who paid a Community Fee at the start of their Lease or made at least one monthly payment for the Technology Package.

c.  **The RUBS Class**: All persons from June 1, 2022 to the present who are or were tenants in a residential rental property owned by Defendant Camden Development, Inc. in Maryland and who paid their water, sewer, and/or stormwater bills pursuant to a ratio utility billing system without being provided i) a copy of the last two utility bills issued to the landlord; ii) the average monthly bill for all dwelling units in the residential rental property in

17

the previous calendar year, by utility; and/or iii) a citation to the relevant

section of the law, as required by Md. Code Ann., Real Prop. § 8-212.4(c)(1).

58.    Excluded from all three classes are:

    a.    any individuals who now are or have ever been executives of the Defendant

      and the spouses, parents, siblings and children of all such individuals;

    b.    any individuals against whom a money judgment, as defined in Md. Code

      Ann., Cts. & Jud. Proc. §11-401(c)(1) and which could form the basis of a

      judgment lien, in favor of Defendant or in favor of the landlord of properties

      that Defendant manages was entered; and

    c.    any individuals who have been granted a discharge pursuant to the United

      States Bankruptcy Code or state receivership laws after the date of his or her

      lease with the landlord of properties that Defendant manages.

59.    The three Classes, as defined above, are identifiable.

60.    Upon information and belief, each Class consists, at a minimum, of several

hundred of Maryland tenants and is thus so numerous that joinder of all members is clearly

impracticable.

61.    There are questions of law and fact which are not only common to the Class but

which predominate over any questions affecting individual class members.

62.    The common and predominating questions for the Deceptive Marketing Class

include, but are not limited to:

    a.    Whether Defendant deceived applicants by failing to adequately disclose one-

      time and monthly fees on its own websites and third-party websites;

b.  Whether Defendant violated Maryland law by charging application fees to deceived consumers when such fees were not due and owing;

c.  Whether Defendant assessed, attempted to collect and/or collected application fees from members of the Class that the Defendant had no legal right to demand or collect, and for which the Class members were not liable; and

d.  Whether the Class members are entitled to a refund of all application fees when Defendant had no legal right to demand or collect such fees, along with interest accrued, and attorneys' fees.

63.  The common and predominating questions for the Illegal Fee Class include, but are not limited to:

a.  Whether Defendant charged fees indicated as "Community Fee" and "Technology Package" when such fees were not due and owing;

b.  Whether Defendant violated Maryland law by charging fees indicated as "Community Fee" and "Technology Package" when such fees were not due and owing;

c.  Whether Defendant assessed, attempted to collect and/or collected fees from members of the Class that the Defendant had no legal right to demand or collect, and for which the Class members were not liable; and

d.  Whether the Class members are entitled to a refund of all fees indicated as "Community Fee" and "Technology Package" when Defendant had no legal right to demand or collect such fees, along with interest accrued, and attorneys' fees.

64.     The common and predominating questions for the RUBS Class include, but are not limited to:

      a.   Whether Defendant charged utility fees pursuant to the ratio utility billing system without providing the written information required by law;

      b.   Whether Defendant overcharged utility fees to Maryland tenants; and

      c.   Whether the Class members are entitled to a refund of all utility fees charged pursuant to the ration utility billing system when Defendant had no legal right to demand or collect such fees, along with interest accrued, and attorneys' fees.

65.     Plaintiffs' claims are typical of the claims of the respective members of each of the three Classes within the meaning of Maryland Rule 2-231(b)(3) and are based on and arise out of similar facts constituting the wrongful conduct of Defendant. The prosecution of separate actions by individual members of the three Classes would create a risk of establishing incompatible standards of conduct for Defendant, within the meaning of Maryland Rule 2-231(c)(1)(A).

66.     Common questions of law and fact enumerated above predominate over questions affectingly only individual members of the three Classes, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Rule 2-231(c)(3). The likelihood that individual members of the three Classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation, and the fact that Defendant affirmatively misrepresents to consumers their rights and obligations.

67.     Plaintiffs' counsel is experienced in class actions and foresee little difficulty in the management of this case as a class action.

68.     Named Plaintiffs are adequate and have no interested antagonistic to the any Class and will fairly represent the interests of each of the three Classes in accordance with their affirmative obligations and fiduciary duties.

**COUNT ONE**
**VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT**
**MD. CODE ANN., COM. LAW § 13-301, ET SEQ.**
**ON BEHALF OF ALL CLASSES**

69.     Named Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

70.     Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Com. Law § 13-101 et seq., prohibits any "person" from engaging in any unfair or deceptive trade practices regarding, among other things, the rental of consumer realty and the collection of consumer debts. Md. Code Ann., Com. Law §§ 13-303(1) and (5).

71.     As a "person" under the CPA, Md. Code Ann., Com. Law § 13-101(h), Defendant is prohibited from engaging in unfair and deceptive trade practices.

72.     The CPA specifically prohibits Defendant from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers. Md. Code Ann., Com. Law § 13-301(1).

73.     The CPA further prohibits Defendant from failing to state a material fact if the failure deceives or tends to deceive. Md. Code Ann., Com. Law § 13-301(3).

74.     In connection with its marketing campaign, Defendant represents, directly or indirectly, expressly or by implication, that the advertised monthly leasing price is the total monthly amount that consumers will pay to rent one of Defendant's apartments.

75.     In fact, Defendant's representations are false. The advertised monthly leasing price—on Defendant's own website and on third-party websites that Defendant advertises on—is

not the totally monthly amount that consumers will pay to rent one of Defendant's apartments because it does not include one-time and monthly fees that consumers must pay.

76.     Therefore, Defendant's representations constitute a deceptive act or practice and the making of false advertising violates the CPA.

77.     In connection with its fees, Defendant represents, directly or indirectly, expressly or by implication, that its monthly Technology Package fee is charged for the tenants' access to cable television and Internet and that its one-time Community Fee is charged for the tenants' access to other amenities like the gym and the pool.

78.     In fact, Defendant's representations are false. The Technology Package includes charges for the online tenant portal, door locks, and the Company's "social site." These additional technology services are not disclosed in the Company's Lease or Addendum and no reasonable consumer would assume they are being separately charged for them when they pay for a "Technology Package."

79.     Similarly, the Community Fee includes charges for the general upkeep on communal spaces, rather than merely amenities. The true allocation of the Community Fee is never disclosed in the Company's Lease or Addendum and no reasonable consumer would assume they are being separately charged for costs the landlord is obligated to bear under Maryland law.

80.     Camden's purpose for separate charging for the Community Fee and the Technology Package—rather than baking these extraneous costs into the monthly rent like the vast majority of its competitors do—is to artificially lower the price of its advertised rental listings.

81.     This entire scheme—the charging of junk fees that are not adequately advertised or disclosed—is lucrative for Defendant. But it constitutes an unfair and deceptive trade practice in violation of Maryland's CPA.

82.     In violation of the CPA, Md. Code Ann., Com. Law §§ 13-301(1) and (3), Defendant told the Named Plaintiff and the Class they were obligated to pay the utility fees pursuant to RUBS that were not legally enforceable and higher than the actual costs.

83.     Defendant engaged in unfair and deceptive practices by collecting and attempting to collect on monies which, in fact, were not legally due, were not legally enforceable and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, Md. Code Ann., Com. Law § 13-101 et seq., including Md. Code Ann., Com. Law §§ 13-303(1) and (5), and §§ 13-301(1) and (3).

84.     A violation of Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201 et seq. is an unfair and deceptive trade practice in violation of the CPA.

85.     As a result of Defendant's unfair and deceptive trade practices in violation of the CPA, members of the Class were induced to make payments in excess of what is legal, causing Named Plaintiffs and the members of the Classes injury or loss.

86.     Defendant acted knowingly or with reckless disregard when it marketed its apartments and charged these fees. It is a sophisticated, publicly traded company that has made deceptive marketing, junk fees, and utility overbilling part and parcel of its business model.

87.     Named Plaintiffs and the members of the Class seek to recover damages and their attorneys' fees from Defendant.

**COUNT TWO**
**VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT**
**MD. CODE ANN., COM. LAW § 14-201, ET SEQ.**
**ON BEHALF OF ALL CLASSES**

88.     Named Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

89.     Defendant's actions in charging and collecting application fees when the fees were not due and owing due to deceptive marketing practices violates Md. Code Ann., Com. Law § 14-202(8) which prohibits a debt collector from making any "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

90.     Defendant's actions in charging and collecting Community Fees and Technology Package Fees when the fees were not due and owing due to misrepresentations in the Lease violates Md. Code Ann., Com. Law § 14-202(8) which prohibits a debt collector from making any "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

91.     Defendant's actions in attempting and collecting inflated utility fees pursuant to the ratio utility billing system ("RUBS") without providing the requisite written information, violates Md. Code Ann., Com. Law § 14-202(8) which prohibits a debt collector from making any "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

92.     The Maryland Consumer Debt Collection Act also provides that a collector may not engage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act ("FDCPA").  Md. Code Ann., Com. Law § 14-202(11).

93.     The FDCPA prohibits false representations of the character, amount, or legal status of any debt (15 U.S.C § 1692e(2)(A)) [FDCPA § 807]; false representations or deceptive means to collect any debt (15 U.S.C § 1692e(10)) [FDCPA § 807]; and unfair or unconscionable means to collect or attempt to collect any debt unless such amount is permitted by law (15 U.S.C § 1692f(1)) [FDCPA § 808].

94.     Defendant violated Md. Code Ann., Com. Law § 14-202(11) by demanding and/or collecting payment of application fees, Community Fees, Technology Package fees, and utility fees when Defendant was prohibited by law from charging such amounts.

95.     The fees which Defendant attempted to collect and collected concerned "real or personal property, services, money, or credit for personal, family, or household purposes."  Md. Code Ann., Com. Law § 14-201(c). Namely, the underlying debt was for personal, residential housing.

96.     Defendant is a "collector" under Md. Code Ann., Com. Law § 14-201(b) as it collected or attempted to collect an alleged debt—application fees, Community Fees, Technology Package fees, and utility fees—arising out of a consumer transaction, namely a personal, residential lease transaction and lease application.

97.     Defendant acted knowingly or with reckless disregard when it charged and demanded these fees. It is a sophisticated, publicly traded company that has made deceptive marketing, junk fees, and utility overbilling part and parcel of its business model.

98.     Named Plaintiffs and the members of the Class seek to recover damages and their attorneys' fees from Defendant.

**<u>COUNT THREE</u>**
**VIOLATION OF MARYLAND REAL PROPERTY ARTICLE § 8-208**
**ON BEHALF OF THE ILLEGAL FEE CLASS**

99.     Named Plaintiffs re-alleged and incorporate by reference the allegations set forth above, and further allege:

100.    Pursuant to Md. Code Ann., Real Prop. § 8-208(d), "[a] landlord may not use a lease or form of lease containing any provision that. . . (2) Has the tenant agree to waive or to forego any right or remedy provided by applicable law."

101.    Section 8-208(g)(1) provides that "[a]ny lease provision which is prohibited by terms of this section shall be unenforceable by the landlord." Further, § 8-208(g)(2) allows for the tenant to recover actual damages and reasonable attorneys' fees if the landlord "tenders a lease containing such a provision or attempts to enforce or makes known to the tenant an intent to enforce any such provision."

102.    In violation of § 8-208(d)(3) and as described above, Defendants have charged, attempted to collect, and/or collected a Community Fee, which is allocated toward the upkeep of parts of buildings that Defendant is responsible for.

103.    By including the Community Fee in the Lease Agreement, Defendant has included a provision that asks tenants to "agree to waive or to forego" their right to hold Defendant responsible for the common areas of the buildings they live in.

104.    Defendants violated Md. Code Ann., Real Prop. § 8-208 and must pay to Plaintiffs and Illegal Fee Class Members actual damages and reasonable attorneys' fees.

## COUNT FOUR
## DECLARATORY AND INJUNCTIVE RELIEF
## ON BEHALF OF ALL CLASSES

105.    Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

106.    Named Plaintiffs seek a declaration individually and on behalf of the Deceptive Marketing Class that Defendant is not entitled to charge application fees to prospective tenants when those consumers discovered Defendant's buildings using websites that do not accurately display the rental amount, inclusive of fees.

107.    Named Plaintiffs seek a declaration individually and on behalf of the Illegal Fee Class that Defendant is not entitled to charge a Community Fee to tenants when the Community Fee is at least partially allocated to the upkeep of common areas.

108.    Named Plaintiffs seek a declaration individually and on behalf of the Illegal Fee Class that Defendant is not entitled to charge a monthly fee for a Technology Package without providing an adequate explanation of the nature of the fee.

109.    Named Plaintiffs seek a declaration individually and on behalf of the RUBS Class that Defendant is not entitled to charge utility fees for sewer, water, and stormwater in excess of what its purported RUBS calculation yields, including by not passing on the utility costs of common areas to tenants.

110.    Named Plaintiffs seek a declaration individually and on behalf of the RUBS Class that Defendant is not entitled to charge utility fees for sewer, water, and stormwater without providing i) a copy of the last two utility bills issued to the landlord; ii) the average monthly bill for all dwelling units in the residential rental property in the previous calendar year, by utility; and/or iii) a citation to the relevant section of the law, as required by Md. Code Ann., Real Prop. § 8-212.4(c)(1).

111.    Defendant should be ordered to disgorge all fees in excess of those permissible under Maryland law that they have obtained from Plaintiffs and all three Classes as a result of collecting the impermissible and illegal fees. The disgorged amounts are liquidated amounts.

112.    Defendant should be enjoined from attempting to collect and/or collecting application fees to prospective tenants when those consumers discovered Defendant's buildings using websites that do not accurately display the rental amount, inclusive of fees.

113.    Defendant should be enjoined from attempting to collect and/or collecting Community Fees from tenants when the Community Fee is at least partially allocated to the upkeep of common areas.

114.    Defendant should be enjoined from attempting to collect and/or collecting a Technology Package fee from tenants without providing an adequate explanation of the nature of the fee.

115.    Defendant should be enjoined from overcharging tenants for utilities.

116.    Defendant should be enjoined from charging utility fees for sewer, water, and stormwater without providing i) a copy of the last two utility bills issued to the landlord; ii) the average monthly bill for all dwelling units in the residential rental property in the previous calendar year, by utility; and/or iii) a citation to the relevant section of the law, as required by Md. Code Ann., Real Prop. § 8-212.4(c)(1).

117.    Alternatively, Plaintiffs seek a declaration that Defendants are not entitled to the assistance of any Maryland court in enforce improper or illegal fees.

WHEREFORE, as to the claims set forth above, Plaintiffs pray that the following relief be granted to the Named Plaintiffs and the Classes on their claims set forth above:

A.    The Court certify three classes of persons as set forth herein or as may be amended, appoint the Plaintiffs as Class Representatives and their counsel as Class Counsel;

B.    The Court order that Defendant pay to the Named Plaintiffs and members of the three Classes all impermissible and illegal fees collected from the Plaintiffs and Class members;

C.    The Court enter judgment in favor of the Named Plaintiffs and members of

the three Classes against Defendant in the amount of all sums paid by the Named Plaintiffs and members of the three Classes toward the claimed and improper fees;

D.   The Court enter an award of pre-judgment and post-judgment interest on all sums awarded to the Named Plaintiffs and members of the three Classes;

E.   The Court award to the Named Plaintiffs and members of the three Classes reasonable counsel fees and the costs of these proceedings; and,

F.   The Court order such other and further relief as the nature of this case may require.

G.   In order to comply with the Maryland Rules, the amount sought for damages is in excess of $75,000.00.

Respectfully submitted,

*/s/ Vaughn Stewart*
Vaughn Stewart, AIS. No.: 2305040018
Chelsea Ortega, AIS No.: 1212120342
Santoni, Vocci & Ortega, LLC
201 W. Padonia Road, Suite 101
Lutherville-Timonium, MD 21093
Phone: 443-921-8161
Fax: 410-525-5704
vstewart@svolaw.com
cortega@svolaw.com
*Attorneys for the Named Plaintiffs*
*and Putative Class*

## CLAIM FOR ATTORNEYS' FEES

Named Plaintiffs reiterate that, as stated in the individual counts for relief, they intend to seek attorneys' fees pursuant to Maryland Rule 2-701, *et seq.*, and these fees may be substantial as litigation continues.

*/s/ Vaughn Stewart*
Vaughn Stewart

## **DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of the Class Members, demand trial by jury.

*/s/ Vaughn Stewart*
Vaughn Stewart