```
            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND

                                  :
JOHN HALL and MONICA M. BAHENA
                                  :

     v.                           :   Civil Action No. DKC 25-366

                                  :
CAMDEN DEVELOPMENT, INC.
                                  :
```

**MEMORANDUM OPINION**

This is a putative class action brought by Plaintiffs John Hall and Monica Bahena ("Plaintiffs") pursuant to the Maryland Consumer Protection Act ("MCPA"), the Maryland Consumer Debt Collection Act ("MCDCA"), and Md. Code Ann., Real Prop. § 8-208 ("§ 8-208") against Defendant Camden Development, Inc. ("Defendant"). Plaintiffs, former tenants of an apartment Defendant manages, contend that Defendant charged and collected various hidden fees in violation of Maryland law. Presently pending and ready for resolution in this consumer protection case are the motion to dismiss for failure to state a claim filed by Defendant, (ECF No. 8), and the motion to strike class allegations filed by Defendant, (ECF No. 9). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the complaint will be dismissed for lack of subject matter jurisdiction, the motion to

dismiss for failure to state a claim will be denied as moot, and the motion to strike class allegations will be denied as moot.

## I. Background[1]

### A. Factual Background

Defendant is Camden Development, Inc., "one of the largest publicly traded multifamily housing companies in the United States." (ECF No. 4 ¶ 2). As of the end of 2023, Defendant managed nearly 60,000 apartment units across the country. (*Id.* ¶ 4). Four of Defendant's 176 multifamily properties are located in Maryland, including the Camden College Park, which has 509 units. (*Id.* ¶¶ 4-5). Plaintiffs are John Hall and Monica M. Bahena, two residents of Prince George's County, Maryland, (*Id.* ¶¶ 19-20), who are former tenants of Defendant's Camden College Park complex, (*Id.* ¶¶ 37-39; ECF No. 9-1, at 1 n.1 (noting that Plaintiffs moved out of their apartment on November 30, 2024, after filing suit)).

In March 2024, Plaintiffs began looking for an apartment "that met both their budget and geographic preferences." (ECF No. 4 ¶ 35). Their budget was no more than $1,800 per month. (*See id.*). Defendant advertises its rental units on its own website and on "third-party websites such as Zillow, Trulia, and Realtor.com." (*Id.* ¶¶ 31, 33). While on Zillow, Plaintiffs found a rental unit

---

[1] The following facts are set forth in the complaint and construed in the light most favorable to Plaintiffs.

in Defendant's Camden College Park complex available for $1,729 per month. (*Id.* ¶ 37). On March 17, 2024, Plaintiffs paid $50 in application fees to apply for the unit they had found. (*Id.* ¶ 38). "On or about March 23, 2024, Plaintiffs entered into a Lease Agreement" with Defendant for the Camden College Park unit, (*Id.* ¶ 39), at a monthly rent of $1,729, (*Id.* ¶ 41). The lease term was March 30, 2024, to July 27, 2025. (*Id.* ¶ 39). Plaintiffs' lease provided for the $50 application fee, a $118 monthly fee for a "Technology Package," a one-time $450 "Community Fee," and a monthly utility fee for water, sewer, and stormwater calculated accorded to a Ratio Utility Based System ("RUBS"). (*Id.* ¶¶ 42-43, 48). These four fees are mandatory, (*Id.* ¶¶ 22, 24, 26, 48), and form the basis of Plaintiffs' complaint. They are explained further below.

Plaintiffs allege that by excluding the mandatory fees from the advertised base rental price, Defendant "lures people to . . . pay nonrefundable application fees . . ., only later to learn that the actual monthly rental price is higher than advertised." (*Id.* ¶ 22). Plaintiffs highlight that Defendant's website advertises the monthly lease price as the "Base Rent" or "Starting Price," when that price is allegedly "not actually attainable" due to additional fees. (*Id.* ¶ 30). They note that "[p]rospective tenants must click through several screens [on Defendant's

website] to access information about [Defendant's] mandatory fees." (*Id.* ¶ 31). Once a prospective tenant clicks through, he or she arrives at a screen titled "Monthly Rent Summary." (*Id.*). Below the rent amount, the page lists the Technology Package for $118 per month, and below that, the "Total Due Monthly." (*Id.*). Farther down the page, a section titled "One-Time Fees" lists the $25 application fee per person and the $450 Community Fee. (*Id.*) Plaintiffs allege that on this page, Defendant "never makes it clear that the fees are mandatory" because "[c]onsumers are not accustomed to paying mandatory fees" for such items "and can readily assume that they can instead opt for the 'Starting Price.'" (*Id.*). Plaintiffs further allege that because the next section is labeled "Other Potential Fees," Defendant implies that the above fees are also potential, rather than mandatory, fees. (*Id.* ¶ 32). Finally, Plaintiffs found Defendant's rental unit on Zillow, where they allege that "the advertised rental price [did] not include mandatory fees" or any other "information about [Defendant's] mandatory fees." (*Id.* ¶¶ 33, 37).

   Plaintiffs next take issue with the $118 per month Technology Package that Defendant charges. Page one of their lease states that the Technology Package "may include cable TV, internet and Wi-Fi," and page seven similarly indicates that the Technology Package "may, but is not required to, include digital adapters,

cable TV, internet, WiFi and electronic access devices." (*Id.* ¶ 46). Lamenting the requirement that they pay for cable in an era of streaming, (*Id.* ¶ 11), Plaintiffs allege that the Technology Package charges a fee for a service many, if not most, residents do not wish to use, (*Id.* ¶ 24). Moreover, the Technology Package includes other services, such as "door locks, an online payment portal, and a 'social site,'" that Plaintiffs allege were not disclosed in the lease. (*Id.* ¶ 47). The lease explains that "[i]f the Technology Package box is checked on page 1 of this Lease, the Technology Package amenities offered by the Community are included in the Monthly Rent." (*Id.* ¶ 46). Plaintiffs did check the box for the Technology Package on page one but allege that "the cost of the Technology Package is not, in fact, included in 'Rent' on Page 1, but instead listed as a separate $118 fee." (*Id.*).

The one-time $450 Community Fee is also objectionable, Plaintiffs allege. Quoting a response by a Camden employee to a Yelp review in 2022 regarding a Camden property in Tampa, Florida, Plaintiffs allege that the Community Fee "covers the costs and upkeep associated with the community and amenities." (*Id.* ¶ 26; ECF No. 8-1, at 19). More specifically, Plaintiffs allege that Defendant represented that the "Community Fee is charged for the tenants' access to other amenities like the gym and pool," (ECF

5

No. 4 ¶ 77), when the Community Fee also provides "for the general upkeep [of] communal spaces," (*Id.* ¶ 79).

Plaintiffs point to statements and filings by Defendant to allege that Defendant knows the Technology Package and Community Fee are improper charges.  Defendant refers to these fees as "ancillary income."  (*Id.* ¶ 8).  In 2007, Defendant's Executive Vice Chairman stated that Defendant is a "nickel-and-dime business."  (*Id.*).  In 2011, Defendant's director of ancillary services called the fees "icing on the cake, as supplemental to our rental income."  (*Id.*).  On a 2021 earnings call, Defendant's Executive Vice Chairman explained that the fees are "clearly . . . improving the lives of our shareholders." (*Id.* ¶ 29).  Lastly, Plaintiffs note that in Defendant's SEC annual filing, it "warned investors that one risk [Defendant] faces is the prospect of new laws that 'could limit our ability to . . . charge certain fees.'" (*Id.* ¶ 27).

The final fee Plaintiffs focus on is the monthly utility fee. Both the monthly water bill and sewer bill are calculated according to the RUBS Occupancy Method, which is "[Total Expense ÷ Total Occupants of Community] x [Your Occupants]."  (*Id.* ¶ 48).  The monthly stormwater bill is calculated according to the RUBS Per Dwelling Unit Method, which is "[Total Expense ÷ Total Occupied Units]."  (*Id.*).  Plaintiffs allege that when utility bills are

calculated using the RUBS, Defendant is obligated to provide "[a] copy of the last two utility bills issued to the landlord; [t]he average monthly bill for all dwelling units in the residential rental property in the previous calendar year, by utility; and [a] citation to [Md. Code Ann., Real Prop. § 8-212.4]," and "Defendant failed to provide any of [that] information."  (*Id.* ¶¶ 50–51). Plaintiffs allege that, as a result, they have paid water, sewer, and stormwater fees "that are far higher than normal in similar apartment buildings," (*Id.* ¶ 54), but provide no further information regarding utility fees in similar apartment buildings. Plaintiffs state that "for the period between June 14, 2024 and July 16, 2024, [they] were charged $95.60 for sewer, $59.57 for water, and $8.99 for stormwater."  (*Id.*).

**B.   Procedural Background**

On November 6, 2024, Plaintiffs filed a putative class action against Defendant in the Circuit Court for Prince George's County, Maryland.  (ECF Nos. 1 ¶ 1; 1-1; 4).  There are three proposed classes.  First, the Deceptive Marketing Class consists of "[a]ll persons from November 6, 2021 to the present who paid an application fee to a residential rental property managed by Defendant Camden Development, Inc. in Maryland and stated on Camden's Lease Application Agreement that the 'Advertising Source' was Defendant's website or a third-party real property website,

including, but not limited to, Zillow, Realtor.com, Trulia, Apartmentguide.com, and Redfin." (ECF No. 4 ¶ 57). Second, the Illegal Fee Class consists of "[a]ll persons from November 6, 2021 to the present who are or were tenants in a residential rental property owned by Defendant Camden Development, Inc. in Maryland and who paid a Community Fee at the start of their Lease or made at least one monthly payment for the Technology Package." (*Id.*). Third, the RUBS Class consists of "[a]ll persons from June 1, 2022 to the present who are or were tenants in a residential rental property owned by Defendant Camden Development, Inc. in Maryland and who paid water, sewer, and/or stormwater bills pursuant to a ratio utility billing system without being provided i) a copy of the last two utility bills issued to the landlord; ii) the average monthly bill for all dwelling units in the residential rental property in the previous calendar year, by utility; and/or iii) a citation to the relevant section of the law, as required by Md. Code Ann., Real Prop. § 8-212.4(c)(1)." (*Id.*). In the complaint, Plaintiffs seek money damages for violations of the MCPA in Count One, (*Id.* ¶¶ 69-87), violations of the MCDCA in Count Two, (*Id.* ¶¶ 88-98), and violations of Md. Code Ann., Real Prop. § 8-208 in Count Three, (*Id.* ¶¶ 99-104), as well as declaratory and injunctive relief for the MCPA, MCDCA, and § 8-208 violations in Count Four, (*Id.* ¶¶ 105-17).

On February 5, 2025, Defendant timely removed the case to this court, asserting diversity jurisdiction and jurisdiction under the Class Action Fairness Act.  (ECF No. 1 ¶¶ 5, 25).  On February 12, 2025, Defendant filed a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), (ECF No. 8), along with a motion to strike class allegations under Fed.R.Civ.P. 23, (ECF No. 9).  On March 12, 2025, Plaintiffs filed an opposition to Defendant's motion to dismiss, (ECF No. 15), and an opposition to Defendant's motion to strike class allegations, (ECF No. 14).  On April 2, 2025, Defendant filed a reply to Plaintiffs' opposition to the motion to dismiss, (ECF No. 19), and a reply to Plaintiffs' opposition to the motion to strike class allegations, (ECF No. 20).

## II. Standing[2]

Before reaching the merits of Defendant's motion to dismiss, the court must first assure itself that Plaintiffs have standing.  The court has an independent duty to determine whether it possesses jurisdiction over the case.  *Wells v. Johnson*, --- F.4th ---, No. 24-cv-1829, 2025 WL 2315981, at *2 (4th Cir. Aug. 12, 2025);

---

[2] The same four fees Plaintiffs challenge provide the basis of their MCPA, MCDCA, and § 8-208 claims.  The court thus analyzes Plaintiffs claims by fee rather than by count.  Plaintiffs' failure to establish standing for each fee necessarily extinguishes the various statutory claims arising from each fee.

Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "In making this assessment" at the motion to dismiss stage, the court "accept[s] all allegations in the complaint as true and construe[s] those allegations 'in the light most favorable to the plaintiff.'" *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (quoting *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017)).

Article III standing "is a threshold, jurisdictional issue." *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir. 1993). The standing requirement consists of three elements.

> To establish standing, a plaintiff bears the burden of establishing: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014).

*Straubmuller v. Jetblue Airways Corp.*, No. 23-cv-384-DKC, 2023 WL 5671615, at *2 (D.Md. Sep. 1, 2023). The fact that a suit is a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518

10

U.S. 343, 357 (1996) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)). A plaintiff must demonstrate standing for each individual claim for relief. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

To demonstrate injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)). Importantly, a statutory violation does not alone constitute a concrete harm. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). Consequently, "a plaintiff cannot automatically satisfy the injury in fact requirement whenever there is a statutory violation." *Straubmuller*, 2023 WL 5671615, at *2 (citing *TransUnion*, 594 U.S. at 426).

To satisfy the causation requirement, a plaintiff must allege "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citation modified).

11

Finally, a plaintiff establishes redressability when he shows that "the court has the power to grant the plaintiff's requested relief, and that such relief would redress the plaintiff's injury." *Buscemi*, 964 F.3d at 259 (citing, *inter alia*, *K.C. ex rel. Africa H. v. Shipman*, 716 F.3d 107, 116–17 (4th Cir. 2013)).

### A.  Utility Fee

The first requirement of an injury in fact is fatal to Plaintiffs' RUBS claims regarding utility fees in Count One, (ECF No. 4 ¶¶ 82, 84), Count Two, (*Id.* ¶¶ 91, 94), and Count Four, (*Id.* ¶¶ 109–10, 115–16).

Plaintiffs allege that Defendant failed to provide the required documentation under Maryland law when charging utilities according to the RUBS. (*Id.* ¶¶ 50–51). Defendant's alleged failure to provide the required documentation constitutes a statutory violation. That alone, however, does not give rise to a concrete harm. Plaintiffs' further allegation that their utility bills "are far higher than normal in similar apartment buildings," (*Id.* ¶ 54), is conclusory and unsupported by factual content that appears to be available to Plaintiffs. Moreover, Plaintiffs' recitation of their June/July 2024 utility bill, (*Id.*), offers little support because they provide no meaningful comparator. In short, there is no way to determine what, if anything, Plaintiffs overpaid. Accordingly, Plaintiffs have failed to allege an injury

in fact for their RUBS claims and they lack standing to pursue those claims.

Plaintiffs' RUBS claims in Counts One, Two, and Four will be dismissed for lack of subject matter jurisdiction.

**B.   Technology Package**

The lack of an injury in fact is also fatal to Plaintiffs' Technology Package claims in Count One, (ECF No. 4 ¶¶ 77–78, 84), Count Two, (*Id.* ¶¶ 90, 94), and Count Four, (*Id.* ¶¶ 108, 114).

Plaintiffs allege that Defendant misrepresented the nature of the Technology Package because rather than apply the monthly Technology Package fee only to "cable television and Internet," Defendant also applied the fee to "bizarre 'perks'" such as the "online tenant portal, door locks, and [Defendant's] social site" for the residents.  (*Id.* ¶¶ 77, 78; ECF No. 15, at 17).  "These additional technology services," Plaintiffs argue, "are not disclosed in the Company's Lease or Addendum and no reasonable consumer would assume they are being separately charged for them." (ECF No. 4 ¶ 78).

Defendant retorts that Plaintiffs' lease clearly states the Technology Package "includes a number of different amenities designed to enhance Resident's living experience in the Community."  (ECF No. 8-1, at 17 (quoting ECF No. 8-2, at 8)). Moreover, Plaintiffs' contention that they are "separately

13

charged" for the additional services is unfounded, Defendant explains, because they are charged the same, single fee every month. (*Id.*). If anything, Plaintiffs are receiving a "better bargain" by receiving more services than they initially thought for the same fee. (*Id.* at 18).

Plaintiffs cannot establish that they have suffered an injury in fact by virtue of their Technology Package payments. They do not identify any service explicitly mentioned in the Technology Package that they did not receive in return for their payment. Their assertion that Defendant should have used the Technology Package to provide "only cable television and internet" cannot support an injury, either. Construing their purported injury to be the portion of the Technology Package applied to the services they did not subjectively anticipate, the injury does not withstand scrutiny. Even if the lease was vague as to the other services, Plaintiffs proceeded on the assumption that they would receive only cable television and internet, which they do not allege they failed to receive. Plaintiffs were willing to pay $118 per month for only cable television and internet. They do not allege that the cable television and internet together were worth less than $118 per month. Therefore, they cannot identify any portion of the $118 fee to which Defendant was not entitled. Furthermore, Plaintiffs' lease clearly indicates that the Technology Package

14

can provide for the services Plaintiffs posit "[n]o reasonable consumer would know that they are also paying for," including door locks as well as software and mobile applications, (ECF Nos. 8-2, at 8-9; 15, at 16). In other words, Plaintiffs simply received the benefit of their bargain.

Plaintiffs' Technology Package claims in Counts One, Two, and Four will be dismissed for lack of subject matter jurisdiction.

C.  **Community Fee**

Plaintiffs do not demonstrate injury in fact with respect to their Community Fee claims in Count One, (ECF No. 4 ¶¶ 79, 84), Count Two, (*Id.* ¶¶ 90, 94), Count Three (*Id.* ¶¶ 99–104), and Count Four, (*Id.* ¶¶ 107, 113).

Defendant charged Plaintiffs a $450 Community Fee, which Plaintiffs believed would provide for their "access to . . . amenities like the gym and the pool." (*Id.* ¶¶ 43, 77). Plaintiffs allege upon information and belief, however, that Defendant also applied the Community Fee to the "general upkeep of its apartment buildings' common areas despite Maryland law assigning responsibility of common areas to the landlord." (*Id.* ¶ 44). In support of this allegation, Plaintiffs cite a response from a Camden business manager in Tampa, Florida, to a 2022 Yelp review explaining that "[t]he fee covers the costs and upkeep associated

with the community and amenities." (*Id.* ¶ 26; ECF No. 8-1, at 19 & n.3).

Plaintiffs' Yelp citation and information and belief pleading are insufficient to articulate an injury. First, the Yelp response states only that the Community covers "upkeep associated with the community and amenities." To the extent Plaintiffs' asserted injury is the portion of the fee applied to the common areas, the response refers to the "community," a general term, rather than "common areas," a term of art. *See Hemmings*, 375 Md. at 538–40 (referring repeatedly to a landlord's duty over "common areas"). The response thus does not support Plaintiffs' contention that any portion of the Community Fee was applied to the common areas. Second, Plaintiffs do not supply any facts linking Defendant's business practices in Florida to its business practices in Maryland. There is no basis, then, to surmise that Defendant applies the Community Fee to upkeep of common areas in its Maryland complexes. Finally, information and belief pleading is permissible "when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff *but he has sufficient data to justify interposing an allegation on the subject*." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1224 (4th ed.) (emphasis added). Plaintiffs plainly lack the sufficient data that Defendant applies the Community Fee

to upkeep of the common areas, as explained above, to justify alleging the same on information and belief.

Plaintiffs' Community Fee claims in Counts One, Two, Three, and Four will be dismissed for lack of subject matter jurisdiction.

**D. Application Fee**

The second requirement of causation is fatal to Plaintiffs' Application Fee claims in Count One, (ECF No. 4 ¶¶ 74–75, 84), Count Two, (*Id.* ¶¶ 89, 94), and Count Four, (*Id.* ¶¶ 106, 112).

Plaintiffs discovered Defendant's apartment on the third-party platform Zillow, (*Id.* ¶ 37), which evidently listed the "base rent" and did not include the monthly cost breakdown that is available on Defendant's website, (*Id.* ¶ 33). Plaintiffs appear to have requested an application through Zillow, then submitted a completed "Lease Application Agreement"[3] along with their $50 application fee. (*See id.* ¶¶ 37–38). Plaintiffs do not allege that they looked at Defendant's website before completing the application and submitting the fee.

Defendant argues that "Plaintiffs have not pled facts attributing [Zillow's] alleged representations to [Defendant]."

---

[3] Plaintiffs (and Defendant) failed to furnish a copy of this Lease Application Agreement, which complicates any assessment of what Plaintiffs knew and agreed to at the time they paid their application fee.

17

(ECF No. 8-1, at 13). Plaintiffs respond that Defendant "know[s] [it is] responsible for that content on [Zillow] and that is exactly what Paragraph 33 [of the complaint] alleges." (ECF No. 15, at 14). Paragraph 33 in fact states only that Defendant "advertises its home listing through third-party websites such as Zillow." (ECF No. 4 ¶ 33).

Here, Plaintiffs have failed to allege any facts tracing their injury, the payment of the application fee, to the conduct of Defendant. They do not allege that they visited Defendant's website before paying the application fee.[4] Instead, they allege only that they visited the Zillow listing, which represented the base rent as $1,729 and lacked the monthly cost breakdown present on Defendant's website. Zillow, however, is a "third party not before the court." *Lujan*, 504 U.S. at 560. The fact that Defendant advertises on Zillow is not enough to attribute the representations and omissions on Zillow to Defendant. Plaintiffs also decline to argue that Zillow listings of Defendant's units are attributable to Defendant as a matter of law. Consequently, Plaintiffs' Application Fee claims fail the causation requirement.

---

[4] Plaintiffs do allege that the application fee was provided for in their lease. (ECF No. 4 ¶ 43). At that point, however, Plaintiffs had already paid the application fee. That Defendant later memorialized the fee in the lease does not change the fact that Plaintiffs paid the fee in reliance only on the representations on Zillow.

18

Plaintiffs' Application Fee claims in Counts One, Two, and Four will be dismissed for lack of subject matter jurisdiction.

* * *

Plaintiffs have failed to satisfy the standing requirements for their Utility Fee, Technology Package, Community Fee, and Application Fee claims. No claims remain, and the complaint will be dismissed in full for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3).

**III. Motions to Dismiss and Strike Class Allegations**

Because Plaintiffs lack standing, the court need not reach Defendant's motion to dismiss for failure to state a claim or its motion to strike class allegations in the complaint. Both motions will thus be denied as moot.

**IV.  Opportunity to Move for Leave to Amend**

Because the court raised and decided the standing issue sua sponte and the dismissal is without prejudice, it is appropriate to provide Plaintiffs with an opportunity to move for leave to amend their complaint if they believe they can correct the jurisdictional deficiencies. Any motion for leave to amend must be filed within twenty-one (21) days.

**V.  Conclusion**

For the foregoing reasons, the complaint will be dismissed for lack of subject matter jurisdiction, Defendant's motion to

19

dismiss will be denied as moot, and Defendant's motion to strike class allegations will be denied as moot.  A separate order will follow.

                                            /s/
                               DEBORAH K. CHASANOW
                               United States District Judge